# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **Noemi Faz, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)** | No.  3:23-cv-02035-S |
| *Plaintiffs,* | |
| **v.** | **PLAINTIFF'S UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT** |
| **Cheesesteak House Sports & Bar, LLC d/b/a Barra Libre, and Joel Padilla** | |
| *Defendants.* | |

### PLAINTIFF'S UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT

**Drew N. Herrmann**
Texas Bar No. 24086523
drew@herrmannlaw.com
**Pamela G. Herrmann**
Texas Bar No. 24104030
pamela@herrmannlaw.com

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102

*ATTORNEYS FOR PLAINTIFF AND COLLECTIVE MEMBERS*

## Table of Contents

I.   Introduction ....................................................................................................... 6

II.  Procedural History............................................................................................. 8

III. Settlement Terms................................................................................................ 9

IV. Arguments & Authority....................................................................................10

    A.  Applicable Legal Standard.....................................................................10

    B.  The Terms of the Proposed Settlement Agreement are Fair and Reasonable and Resolve a *Bona Fide* Dispute ........................................................ 11

        1. A bona fide dispute existed between the Parties ............................... 11

        2. The proposed settlement is fair and reasonable.................................. 13

    C.  The Proposed Settlement Agreement Furthers the Purpose of the FLSA ..................16

    D.  Final certification of the settlement collective pursuant to 29 U.S.C. § 216(b) is appropriate ...........................................................................17

    E.  The Request for Attorneys' Fees and Costs Should be Approved..............................18

    F.  Plaintiffs' counsel's expenses should be approved.................................................... 24

Prayer ......................................................................................................................25

# Table of Authorities

## Cases

*Alaniz v. Maxum Petroleum Operating Co., Inc., No. SA-15-CV-00373-XR*,
  2016 U.S. Dist. LEXIS 150658, 2016 WL 6462206 (W.D. Tex. Oct. 31, 2016) ..................... 11

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ......................................................................... 12, 16-17

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .............................................................. 14

*Diaz v. Scores Holding Co.*,
  2011 U.S. Dist. LEXIS 112187 (S.D.N.Y. July 11, 2011) ......................... 12

*Diaz v. World Acceptance Corp., No. 1:19-CV-957-RP*,
  2021 U.S. Dist. LEXIS 124650 (W.D. Tex. Jan. 7, 2021) ...................... 23

*Ellis v. Baptist Mem'l Health Care Corp., No. 3:18-CV-73-SA-JMV*,
  2021 U.S. Dist. LEXIS 60875 (N.D. Miss. Mar. 30, 2021) ............................. 24, 24

*Fisher Brothers v. Phelps Dodge Indus., Inc.*,
  604 F. Supp. 446 (E.D. Pa. 1985) ............................................................ 14

*Fuchs v. B & B Star Air Duct & Hvac, No. 1:20-CV-319-RP*,
  2021 U.S. Dist. LEXIS 125723 (W.D. Tex. Jan. 7, 2021) ................................. 23, 23

*Garza v. Sporting Goods Props., No. SA-*
  93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996) .................... 21

*Hilton v. Exec. Self Storage Assocs. Inc., No. CIV.A. H-06-2744*,
  2009 U.S. Dist. LEXIS 51417, 2009 WL 1750121 (S.D. Tex. June 18, 2009) ........................ 25

*Hiser v. NZone Guidance, LLC, No. 1:18-CV-1056-RP*,
  2021 U.S. Dist. LEXIS 131524 (W.D. Tex. Jan. 25, 2021) .......................... 17, 19, 23

*In re Abrams & Abrams, P.A.*,
  605 F.3d 238–46 (4th Cir. 2010) ............................................................ 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .................................................................... 14

*In re Wells Fargo Wage & Hour Emp. Pracs. Litig.*
  (No. III), 18 F. Supp. 3d 844 (S.D. Tex. 2014) ....................................... 17

*Izzio v. Century Golf Partners Mgmt., L.P., No. 3:14-cv-03194-M*,
  2019 U.S. Dist. LEXIS 226946, 2019 WL 10589568 (N.D. Tex. Feb. 13, 2019) ............. 18, 10

*Johnson v. Georgia Highway Exp., Inc.*
  Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974) ................................... 20

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) (en banc.) .............................................................. 22

*Lliguichuzhca v. Cinema 60, LLC*,
  948 F. Supp. 2d 362 (S.D.N.Y. 2013) .................................................................. 12

*Lopez v. Eats, No. 3:18-cv-1091-X-BN*,
  2023 U.S. Dist. LEXIS 111061 (N.D. Tex. June 28, 2023) ................................................ 25

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*,
  679 F.2d 1350 (11th Cir. 1982) ................................................................. 10-11, 12

*Martinez v. Bohls Bearing Equip. Co.*,
  361 F. Supp. 2d. 608 (5th Cir. 2005) .................................................................... 11

*Matthews v. Priority Energy Servs., LLC, No. 6:15-CV-448*,
  2018 U.S. Dist. LEXIS 82716, 2018 WL 1939327 (E.D. Tex. Apr. 20, 2018) ........................ 23

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) .............................................. 12

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ........................................................................... 14

*Purdie v. Ace Cash Express, Inc., Civil Action No. 3:01-CV-1754-L*,
  2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) .............................................. 10

*Quintanilla v. A & R Demolition, Inc., No. H-04-1965*,
  2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008) ............................................... 25

*Riddle v. Tex-Fin, Inc., No. H-08-3121*,
  2011 U.S. Dist. LEXIS 29863 (S.D. Tex. Mar. 22, 2011) ............................................. 18

*Rodriguez v. Stage 3 Separation, LLC, No. 5:14-CV-00603-RP*,
  2015 U.S. Dist. LEXIS 186251 (W.D. Tex. Dec. 23, 2015) ............................................ 18

*Schwartz v. TXU Corp., Nos. 3:02-CV-2243-K*,
  2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) .............................................. 19

*Shaw v. CAS, Inc., No. 5:17-cv-142*,
  2018 U.S. Dist. LEXIS 136394 (S.D. Tex. Jan. 31, 2018) ............................................. 18

*Sims v. Hous. Auth. City of El Paso, No. EP-10-CV-109-PRM*,
  2012 U.S. Dist. LEXIS 190164 (W.D. Tex. Feb. 29, 2012) ............................................ 14

*Singer v. City of Waco, Tex.*,
　324 F.3d 813 (5th Cir. 2003) ........................................................ 20

*Singer v. Wells Fargo Bank, N.A., No. 5:19-CV-00679-JKP-ESC*,
　2020 U.S. Dist. LEXIS 256111 (W.D. Tex. July 14, 2020) .................... 23

*Stanley v. Patriot Inspection Servs., No. 6-20-CV-00283-ADA*,
　2021 U.S. Dist. LEXIS 14028 (W.D. Tex. Jan. 26, 2021) ................. 11, 23

*Steele v. Leasing Enterprises, Ltd.*,
　826 F.3d 237 (5th Cir. 2016) ........................................................ 18

*Stepp v. Seton Family of Hosps., No. 1:16-CV-1251-RP*,
　2019 U.S. Dist. LEXIS 48962 (W.D. Tex. Mar. 25, 2019) .............. 14, 22

*Tharp v. Energes LLC, No. 5:15-CV-983-DAE*,
　2018 U.S. Dist. LEXIS 237660 (W.D. Tex. July 16, 2018) .................. 15

*Trevino v. Colt Oilfield Servs., LLC, No. 5-18-CV-01304-FB-RBF*,
　2019 U.S. Dist. LEXIS 143315 (W.D. Tex. May 6, 2019) ............... 10, 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
　669 F.3d 632–44 (5th Cir. 2012) ............................................... 19, 23

*Vela v. City of Houston*,
　276 F.3d 659 (5th Cir. 2001) ........................................................ 23

*Wells v. Sullivan*,
　907 F.2d 367 (2d Cir. 1990) ........................................................ 22

## Statutes

29 U.S.C. § 202 ........................................................................... 16

29 U.S.C. § 216 .................................................................... *passim*

# I.  INTRODUCTION

Plaintiff Noemi Faz, individually and on behalf of all other similarly situated employees (collectively, "Plaintiffs"), files this unopposed motion to approve the settlement reached in this Fair Labor Standards Act ("FLSA") case. The settlement is a reasonable compromise that will adequately compensate the participants for alleged unpaid minimum wage and tips claimed and will eliminate the need for the Parties to continue to engage in protracted and expensive litigation.

Faz filed this collective action on September 11, 2023. Compl., [Doc. 1]. Faz alleged that Defendants Cheesesteak House Sports & Bar, LLC d/b/a Barra Libre, and Joel Padilla (collectively, "Defendants" or "Barra Libre") paid her and other similarly situated workers subminimum hourly wages and violated the FLSA's tip credit provisions. *Id.* Specifically, Plaintiff alleged that Defendants violated the tip credit by (1) failing to provide proper notice of the tip credit; (2) failing to operate a valid and lawful tip pool; (3) requiring servers to pay for uniforms, tools, and other non-203(m) items; and (4) requiring servers to perform nontipped work while paying them subminimum hourly wages. *Id.*  Therefore, Plaintiff claimed that she and other similarly situated employees who worked for Barra Libre as servers and were paid a subminimum hourly wage were entitled to recover unpaid minimum wages, as well as liquidated damages, attorney fees, and costs pursuant to the FLSA. *Id.*; *see also* 29 U.S.C. § 216. Defendants continue to deny all allegations and dispute any liability with respect to the claims asserted.

In connection with the ADR process, the Parties obtained significant compensation data for the proposed collective members to evaluate the scope of Barra Libre's alleged violations of the FLSA. The Parties contested Barra Libre's actions, good faith, pay practices, tip pooling practices, sidework policies, whether proper notice of the tip credit was given, and other issues. The Parties participated in a full day mediation with Dennis Clifford, which resulted in an

agreement to settle the minimum wage and tip credit claims of eighty-five individuals, including the Named Plaintiff, identified on the list *attached as* Exhibit 1 to the Settlement Agreement, all of whom worked as servers for Barra Libre during the Class Period (i.e. November 1, 2022 through November 8, 2023)[1] and were paid a direct cash wage of less than minimum wage. On the day of the mediation, the Parties reached an agreement to settle this matter in principle. The Parties then formalized the settlement, including the content of the proposed notices, and executed the Settlement Agreement *attached as* Exhibit A.

Ultimately, with the help of mediator Dennis Clifford, the Parties reached a Settlement that provides settlement class members[2] with the following relief:

| | |
|---|---|
| Gross Settlement Fund: | $130,500.00 |
| Attorney Fees: | $43,500.00 (33.33%) |
| Costs and Expenses: | $8,000.00 |
| Service Award to Faz: | $5,000.00 |
| Net Settlement Fund: | $74,000.00 |

In addition to funding the above amounts, Defendants have also agreed to separately fund and pay for the cost of retaining Atticus Administration, LLC, a third-party settlement administrator, to administer payments to the settlement class members. *See* Exhibit A at p 3 ¶ 7.

This Settlement provides the settlement class members who elect to participate in the

---

[1]    Because Barra Libre is a new restaurant establishment that first opened in November of 2022, the scope of the collective was limited and there were liquidity concerns for Defendants, therefore the Parties agreed that it was in their mutual interest to attempt an early resolution of this matter.

[2]    The term "settlement class members" means the eighty-five individuals, including the Named Plaintiff, identified on the list *attached as* Exhibit 1 to the Settlement Agreement, all of whom worked as servers for Barra Libre during the Class Period (i.e. November 1, 2022 through November 8, 2023) and were paid a direct cash wage of less than minimum wage. *See* Exhibit A at p 4 ¶¶ 12-13 (Settlement Agreement)

Settlement with meaningful relief for their minimum wage claims and tip credit violations. Plaintiff submits that this is a fair and reasonable result of a *bona fide* dispute concerning the payment of minimum wages and tips owed to Plaintiff and the settlement class members employed by Barra Libre. Any settlement class member who elects to participate in the Settlement will receive meaningful relief for their minimum wage claims. Accordingly, Plaintiff respectfully requests the Court issue an order: (1) approving the Agreement as a fair and reasonable compromise of a *bona fide* dispute, and (2) dismissing this action is in its entirety, with prejudice, subject to the terms of the Agreement.

## II.    PROCEDURAL HISTORY

Shortly after Defendants were served with the Complaint in this matter, the Parties agreed to mediate this case with Dennis Clifford on November 8, 2023. The Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims. This process consisted of extensive ADR-related exchange of information and a full day mediation session overseen by an experienced wage and hour mediator, Dennis Clifford, Esq.

In order to appropriately inform the ADR process, the Parties exchanged data and information to assess the value of the claims, which Plaintiffs' Counsel reviewed and analyzed extensively. This process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arms-length settlement negotiations. Herrmann Decl., Exhibit B at ¶¶ 14-17. The Parties reached an agreement to settle in principle during the Parties' mediation. *See Id.* at ¶ 17; *see also* Joint Notice of Settlement, [Doc. 8].

As a result of the ADR process (including exchange of information), mediation, and settlement negotiations, the Parties have agreed fully and finally to resolve this matter on the terms and conditions set forth in the Settlement Agreement. Exhibit A; *see also* Exhibit B at ¶¶ 14-17. Throughout the ADR process, the Parties, by and through their counsel, engaged in numerous

discussions, as well as written correspondence and negotiations. *Id*.

Plaintiffs have concluded that the terms of the Settlement are fair and reasonable, and that it is in the best interests of Plaintiff and the settlement class members to settle their claims against Defendants and the Released Parties (as defined in the Settlement Agreement). *Id*. at ¶¶ 18-26. Defendants deny the allegations in this lawsuit and further deny liability for any alleged wage and hour violations, including any minimum wage or tip credit violations. *Id*. at ¶¶ 12, 21.

Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to the Settlement Agreement, Plaintiffs have considered: (a) the facts developed during discovery and the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of the Settlement Agreement. The Settlement that was achieved provides significant value for the settlement class members. For these reasons, and as set forth herein, Plaintiffs ask the Court approve the Settlement.

### III.    SETTLEMENT TERMS

The Settlement is being offered on an "opt-in" basis pursuant to Section 16(b) of the FLSA. 29 U.S.C. 216 (b). Only those workers who elect to participate will be bound. Those settlement class members who elect to participate in the Settlement will receive their pro rata allocation of the Settlement funds based on the number of hours they worked as a server and were paid a subminimum hourly wage. Therefore, each settlement class member's settlement amount is, of course, different. However, because the alleged violations resulted from uniform practices, a single formula will be applied to the entire FLSA class to determine each settlement class member's pro rata allocation.

The settlement class members will have 60 days to review and decide whether to accept the Settlement. In exchange for accepting the Settlement, each participating class member will

release Defendants and related persons and entities from any and all FLSA and state law wage and hour claims. The settlement class members who timely elect to participate will receive a settlement award at the close of the 60 day notice period. The awards shall be split in half and paid one-half through a W2 form ("W2 payment") and one-half through an IRS Form 1099 ("1099 Payment").

Faz will receive an additional payment of $5,000.00 as a Service Award for her service as the class representative in this litigation. *Cf. Izzio v. Century Golf Partners Mgmt., L.P.,* No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946, 2019 WL 10589568, at *11-12 (N.D. Tex. Feb. 13, 2019) (Lynn, C.J.) (approving incentive awards ranging from $10,000 to $3,000), *aff'd,* 787 Fed. Appx. 242 (5th Cir. 2019). The service award will be paid as IRS Form 1099 income not subject to withholdings. The service award is intended to recognize Faz's initiative and efforts on behalf of the class members, and her execution of a general release (as opposed to the limited releases executed by the remainder of the class members). Faz provided information helpful to the case, initiated the lawsuit, and otherwise contributed to the overall litigation. *See, e.g., Purdie v. Ace Cash Express, Inc*., Civil Action No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *25 (N.D. Tex. Dec. 11, 2003) (approving incentive award to named plaintiffs because "[p]laintiffs' commitment undoubtedly led to the proposed settlement fund"). The service award is reasonable considering the time, effort, and risks that Faz undertook in connection with filing this litigation, which resulted in a prompt resolution for the settlement class members.

## IV.    ARGUMENTS & AUTHORITY

### A.    Applicable Legal Standard

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB-RBF, 2019 U.S. Dist. LEXIS 143315, at *3 (W.D. Tex. May 6, 2019) (quoting *Lynn's Food*

*Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "A reviewing court must determine that a settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (citing *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 U.S. Dist. LEXIS 150658, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016)).

To approve an FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; and (2) the proposed settlement fairly and reasonably resolves the dispute. *See Stanley v. Patriot Inspection Servs.*, No. 6-20-CV-00283-ADA, 2021 U.S. Dist. LEXIS 14028, at *1-2 (W.D. Tex. Jan. 26, 2021) (approving confidential FLSA settlement agreement and finding it "constitute[s] a fair and reasonable compromise on a *bona fide* dispute").

As set forth below, the proposed Settlement Agreement in this case falls well within the range of possible approval, because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement Agreement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement Agreement.

**B.     The Terms of the Proposed Settlement Agreement are Fair and Reasonable and Resolve a *Bona Fide* Dispute**

    *1.   A bona fide dispute existed between the Parties*

Courts look to "whether there exists a bona fide dispute" under the FLSA regarding the hours worked or compensation due. *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d. 608, 631 (5th Cir. 2005). Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency

and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).1 This inherent inequality, of course, is diminished when workers are represented by experienced counsel. Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co.*, 2011 U.S. Dist. LEXIS 112187, at *6 (S.D.N.Y. July 11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id*. Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotes omitted). "'If the proposed FLSA settlement reflects a reasonable compromise over contested issues,' it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *16 (S.D.N.Y. Mar. 2, 2010) (quoting Lynn's Food Stores, 679 F.2d at 1353-54).

Here, with regard to the wage claims at issue, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1) the extent, if any, that Plaintiff and the settlement class members were required to purchase uniforms, tools, and other non-203(m) items and the number and extent of any such items purchased;

2) the extent, if any, that Plaintiff and the settlement class members were required to perform sidework (including whether such duties were related or unrelated to their duties as servers), and the amount of time, if any, they may have spent performing any such related or unrelated sidework;

3) whether Barra Libre lawfully distributed all tips from the tip pool solely among customarily and regularly tipped employees;

4) whether Barra Libre properly notified Plaintiff and the settlement class members of the tip credit prior to paying them pursuant to the tip credit;

5) the number of hours Plaintiff and the settlement class members spent performing sidework, including whether they spent more than twenty percent

of their time engaged in related sidework duties;

6) the damages and amount of time Plaintiff and the settlement class members were entitled to recover damages for any such violations, including the number of hours spent performing sidework;

7) whether Defendant Joel Padilla was individually liable under the FLSA;

8) whether Defendants would be able to meet their burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages;

9) whether Plaintiff could obtain and maintain a collective action status of the action; and

10) whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

As result of these arguments, and as reflected in the supporting documentation and discovery in the instant suit, the current settlement before the Court is the result of a *bona fide* dispute. Ultimately, the Settlement that was agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case during the Class Period (i.e. November 1, 2022 through November 8, 2023).[3] Because Barra Libre first opened to the public in or about November of 2022, Barra Libre did not employ servers prior to November 1, 2022, and thus none of the settlement class members worked for Barra Libre as servers prior to November 1, 2022. The fact that Barra Libre only recently opened and is a new establishment is an additional factor that Plaintiff considered and weighs in favor of the adequacy of the settlement.

### 2. *The proposed settlement is fair and reasonable*

While the Fifth Circuit has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the following factors: (1) the existence of fraud or collusion behind the settlement; (2)

---

[3]    The Class Period commences on November 1, 2022, because Barra Libre first opened to the public in or about November of 2022.

the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representative, and absent class members. *See Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 U.S. Dist. LEXIS 190164, at *9 (W.D. Tex. Feb. 29, 2012); *Stepp v. Seton Family of Hosps.*, No. 1:16-CV-1251-RP, 2019 U.S. Dist. LEXIS 48962, at *5-6 (W.D. Tex. Mar. 25, 2019) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).

The Gross Settlement Amount provides Plaintiffs and the Settlement Collective Members with the recovery of unpaid minimum wage and tips, and the settlement was carefully negotiated based on the exchange of information, a substantial investigation by the Parties, and the review and analysis of data and information produced to Plaintiffs. There is no foundation to dispute the fairness of this proposed Settlement which resulted from arm's length negotiations.

The Settlement was negotiated by attorneys who have been vigorously prosecuting these and similar claims for several years. Plaintiffs' counsel have had considerable experience in wage and hour claims, both federal and state claims, and in this case both Parties were aware of and negotiated based upon the inherent risks with pursuing the case to trial. Plaintiffs' counsel submits that the Settlement Fund of $130,500.00 for a class of 85 individuals for a one-year period is reasonable in light of the attendant risks and considering the range of possible damages recoverable by the class. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). The Settlement is not a product of fraud or collusion.

The Settlement is based on an analysis of the total number of hours that the Settlement Collective Members worked at the subminimum wage rate during the Class Period (i.e. November 1, 2022 through November 8, 2023), as determined from the records provided.[4] If the Settlement Agreement is approved, all Settlement Collective Members will receive a settlement award check, but only those Settlement Collective Members who sign, deposit and/or cash their Settlement Award will release claims against the Released Parties. Settlement Collective Members will receive a pro rata portion of the Net Settlement Amount calculated as set forth in the Agreement.

In addition, the settlement provides significant, meaningful, and certain relief rather than speculative relief over a course of an additional number of years of litigation, including any potential appeals. Exhibit B at ¶¶ 18-26. When, in comparison to the proposed Settlement Agreement, proceeding with litigation would require a substantial amount of time to yield a benefit to the Settlement Collective Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See, e.g., Tharp v. Energes LLC*, No. 5:15-CV-983-DAE, 2018 U.S. Dist. LEXIS 237660, at *6 (W.D. Tex. July 16, 2018) (finding FLSA settlement fair and reasonable where "[i]n arriving at the proposed settlement, the [p]arties considered the expense and length of continued proceedings necessary to prosecute and defend this case"). In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

Further, the Settlement Agreement was the result of significant investigation, exchange of information, legal and factual disputes, and substantial arm's-length negotiations, which included engaging in ADR with Dennis Clifford, a highly-experienced wage and hour mediator. *See* Exhibit

---

[4]    Because Barra Libre opened to the public in or about November of 2022, Barra Libre did not employ servers prior to November 1, 2022 and thus none of the settlement class members worked for Barra Libre as servers prior to November 1, 2022.

B at ¶ 17. As described above, Plaintiffs' Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law. *Id.* at ¶¶ 18-26. The proposed Settlement Agreement is the product of careful factual and legal research and significant arm's-length negotiations between the Parties, which warrants approval. *See Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB-RBF, 2019 U.S. Dist. LEXIS 143315, at *3 (W.D. Tex. May 6, 2019) (approving FLSA settlement where "[t]he settlement agreement was negotiated by experienced attorneys and reflects an arms' length compromise of the disputed claims.").

Finally, the settlement is also significant given the liquidity concerns of a newer establishment like Barra Libre. Because Barra Libre is a new establishment that first opened for business in November of 2022, there were attendant concerns regarding Defendants' financial wherewithal and ability to sustain a large judgment if the litigation were to continue for several years and Defendants were required to incur substantial defense costs.

Nevertheless, despite any questions regarding Defendants' financial wherewithal and ability to sustain a large judgment, the Settlement Plaintiff achieved is significant and provides meaningful value to the settlement class members. Indeed, the settlement provides settlement class members with nearly full value for their minimum wage damages. Accordingly, the standards for approval are met in this case and the Court should grant the motion in its entirety.

C.    **The Proposed Settlement Agreement Furthers the Purpose of the FLSA**

The settlement achieved here furthers the purposes of the FLSA by providing the Settlement Collective with reasonable recovery for alleged unpaid minimum wages, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition

16

of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all settlement class members will receive a Settlement Award. *See Hiser*, 2021 U.S. Dist. LEXIS 131524, at *7 (quoting O'Neil and holding "settlement agreement is consistent with the FLSA's purposes of protecting workers 'from substandard wages and excessive hours' and safeguarding their ability to obtain relief to which they may be entitled). Because the Settlement Agreement facilitates the FLSA and is a fair and reasonable resolution of a bona fide dispute, it should be approved as reasonable.

**D.     Final certification of the settlement collective pursuant to 29 U.S.C. § 216(b) is appropriate**

Courts in this Circuit do not always require final certification of FLSA collectives pursuant to 29 U.S.C. § 216(b) for purposes of settlement. *See In re Wells Fargo Wage & Hour Emp. Pracs. Litig.* (No. III), 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) ("[C]ourts in the Fifth Circuit have never imposed such a [final certification] requirement and the court is not persuaded that it is necessary or appropriate."). The Parties here have agreed, however, that for settlement purposes only, certification of the settlement class members as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. Accordingly, the Court should also finally certify the Settlement Collective under 29 U.S.C. § 216(b).

Plaintiffs assert, and Defendants do not challenge for settlement purposes only, the settlement class members are "similarly situated" for settlement purposes because (1) the settlement class members worked under the same conditions and compensation policies; (2) were subject to the same alleged unlawful minimum wage and tip credit practices but, Plaintiffs allege, did not receive payment at the applicable minimum wage rate; and (3) the same defenses apply to

all settlement class members since Defendants deny the allegations in this matter. Further, fairness and procedural concerns counsel in favor of final certification, which will enable the settlement class members the option to receive compensation for their unpaid minimum wage without the need to file individual actions. Plaintiffs' Counsel has settled similar cases involving claims of minimum wage and tip credit violations against restaurants. Accordingly, collective action treatment pursuant to 29 U.S.C. § 216(b) is appropriate for purposes of settlement.[5]

**E.    The Request for Attorneys' Fees and Costs Should be Approved**

A plaintiff in an FLSA case may recover their attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) (award of attorney's fees under Section 216(b) of the FLSA is mandatory); *Riddle v. Tex-Fin, Inc.*, No. H-08-3121, 2011 U.S. Dist. LEXIS 29863, at *12 (S.D. Tex. Mar. 22, 2011).

---

[5]    The Settlement also provides that Faz, as the Named Plaintiff, will receive an additional negotiated payment in exchange for a broader general release of claims, and in recognition of her respective services provided to all settlement class members. The proposed additional payment in exchange for a general release of claims to the Named Plaintiff does not otherwise impact the fair and reasonable resolution of a *bona fide* dispute. Further, "courts approve service awards for named plaintiffs and class representatives insofar as they are reasonable." *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 U.S. Dist. LEXIS 136394, at *12 (S.D. Tex. Jan. 31, 2018) (citing *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 U.S. Dist. LEXIS 186251, at *19 (W.D. Tex. Dec. 23, 2015) (approving service award of $7,500 to named plaintiff)). Here, Plaintiff took significant risks in coming forward to represent the interests of their fellow workers, including risking their reputations in the community and in their field of employment, in order to participate in this case on behalf of the settlement class members. Plaintiff worked with Counsel, providing background information about her employment, providing information about Defendants' policies and practices, and providing information to support the allegations in this matter. The payment of the service award does not otherwise impact the fairness and reasonableness of the settlement and is consistent with incentive payments in similar cases. *See, e.g., Sizemore-Easter et al v. Amazon.com, Inc. et al*, No. 5:23-cv-00164, ECF No. 20 (W.D. Tex. April 24, 2023) (ECF No. 20); *Izzio v. Century Golf Partners Management*, 2019 U.S. Dist. LEXIS 226946, 2019 WL 10589568, at *11-12 (N.D. Tex. Feb. 13, 2019) (Lynn, C.J.) (approving incentive awards ranging from $10,000 to $3,000), *aff'd*, 787 Fed. Appx. 242 (5th Cir. 2019).

The Court may begin its analysis of a contingent attorney fee award by looking at fees awarded in other courts, particularly in the Fifth Circuit. The Fifth Circuit recognizes that contingency fees are desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643–44 (5th Cir. 2012). While the Fifth Circuit has not expressly adopted the percentage method over the lodestar method for common fund lawsuits, "[n]umerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." *Schwartz v. TXU Corp*., Nos. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *83 (N.D. Tex. Nov. 8, 2005). The Fifth Circuit recognizes that trial courts have the discretion to award fees based solely on a percentage of the fund approach. *See*, e.g., *Hiser*, 2021 U.S. Dist. LEXIS 131524, at *7 (approving attorneys' fees as 40% of the common fund in an FLSA action based on the terms of the settlement agreement and holding the "[c]ourt finds that the attorney's fees provision in the settlement agreement is fair and reasonable").

In FLSA cases such as this, [6] courts in this Circuit regularly approve attorneys' fees amounting to 40% or more of the settlement amount in FLSA cases. *See e.g., Id.* (approving attorneys' fees as 40% of the common fund in an FLSA action); *see also Comeaux v. Quality Energy Servs., Inc*. No. 6:15 CV 02510 RGJ PJH, [ECF No. 78] (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%). And here, as part of the negotiations that led to the Settlement Agreement, the Parties agreed to negotiated contingency award of approximately one-third (33.33%) of the Gross Settlement Amount for attorneys' fees – less than the 40% that is regularly

---

[6] Other types of actions may involve concerns not present in an FLSA matter such as this. For example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while an FLSA action requires an affirmative decision by potential collective members to opt-in.

approved, which Plaintiffs submit is reasonable and supports approval here.

In evaluating whether fee awards, the Court may look at the factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714 (5th Cir. 1974). These factors include: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. Given that Plaintiffs Counsel's request of one-third is already significantly below the 40% award that is often granted, Plaintiffs respectfully submit that none of the *Johnson* factors warrant a further downward departure from Plaintiffs' Counsel's requested fees.  Nonetheless, Plaintiffs discuss these factors, in turn, below.

First, "the most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex*., 324 F.3d 813, 829 (5th Cir. 2003). Here, and as described above, the Gross Settlement Amount represents a significant recovery on behalf the settlement class members in light of the known risks of the case. The settlement class members will undeniably receive the benefits of the settlement here that they potentially may not have ultimately recovered through this litigation or through their own lawsuit. In sum, the Settlement represents a positive result given the circumstances of the lawsuit and, thus, the "amount involved and results obtained" factor supports the proposed fee award.

Second, there are numerous disputed issues of fact and law. For instance, Defendants denied all of the allegations and denied that they are liable or owe damages. Defendant Joel Padillo

also denied that he was an employer and thus could not be held liable in his individual capacity. Moreover, Defendants argued that the settlement class members were lawfully paid, including all of their tips, and were not owed any additional compensation. Finally, Defendants argued to the extent they did violate the FLSA and were found liable, they acted in good faith and thus the settlement class members would not recover any amount for liquidated damages. Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain and maintain certification in the action, an outcome of zero recovery for Plaintiffs and the settlement class members remained possible.

Third, the wage and hour issues in this matter are governed by the highly technical FLSA and federal regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. *See* Exhibit B ¶¶ 2-6. Plaintiffs' Counsel thus had the requisite skill to perform the legal services required in this complex litigation. And as is described in the declaration submitted herewith, Plaintiffs' Counsel have shown their ability by achieving the positive result obtained for Plaintiffs and the settlement class members. Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs (factor 10). The risk assumed by Counsel is similar to that recognized by district courts in the Fifth Circuit. *See Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *118 (W.D. Tex. Feb. 6, 1996) ("Factors [ ] such as the financial burden on counsel and the demands of handling a class action of the size and complexity as set forth, may cause a case to be considered 'undesirable.'") (internal citations omitted). And Plaintiffs' Counsel took on these matters at the exclusion of other matters (factor 4). A significant portion of Plaintiffs' Counsel's practice involves matters representing tipped employees, and this time could otherwise have been spent on other matters.

*See* Exhibit B at ¶¶ 2-6.

The experience, reputation, and ability of Plaintiffs' Counsel therefore, supports the requested fee award (factors 3, 4, 9 and 10). *See Stepp*, 2019 U.S. Dist. LEXIS 48962, at *5-6 (approving FLSA settlement where "[t]he parties [we]re represented by counsel experienced in FLSA disputes and reached a settlement after months of arms-length negotiation"). Fourth, and as noted above, Plaintiffs' Counsel agreed to represent Plaintiffs on a contingency fee basis (factor 6). *See* Exhibit B at ¶ 29. The Fifth Circuit has recognized, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful from those who are assured of compensation, regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) (en banc.). Other courts have also recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245–46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." Id.

In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. Exhibit B at ¶ 32. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Plaintiffs on a contingency fee basis. By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent

them. *See Fuchs v. B & B Star Air Duct & Hvac*, No. 1:20-CV-319-RP, 2021 U.S. Dist. LEXIS 125723, at \*4 (W.D. Tex. Jan. 7, 2021) ("[T]he [contingent] attorney's fees and costs provisions of the settlement are appropriate and align with the remedial purposes of the FLSA"); *Diaz v. World Acceptance Corp.*, No. 1:19-CV-957-RP, 2021 U.S. Dist. LEXIS 124650, at \*4-5 (W.D. Tex. Jan. 7, 2021) (holding same approving attorneys' fees as one-third of settlement).

The Fifth Circuit recognizes that a contingency fee is desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt*, 669 F.3d at 643–44; *Stanley*, 2021 U.S. Dist. LEXIS 14028, at \*1-2 (approving FLSA settlement which included 35% contingency attorneys' fees); *Fuchs*, 2021 U.S. Dist. LEXIS 125723, at \*4 ("The Court finds that the [40%] contingency fee provided is appropriate and declines to adjust it.").

As described above, the requested contingency award of one-third is less than what is regularly awarded, further supporting its reasonableness. (factors 5, 6, and 12). *See Fuchs*, 2021 WL 2768851, at \*2 (approving 40% attorneys' fees award); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 U.S. Dist. LEXIS 131524, at \*7 (W.D. Tex. Jan. 25, 2021) (approving 40% fee award and holding "this percentage is in line with that courts have approved in reviewing other FLSA settlements"); *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-CV-00679-JKP-ESC, 2020 U.S. Dist. LEXIS 256111, at \*31 (W.D. Tex. July 14, 2020) ("The Parties' agreement that Plaintiffs' counsel is entitled to a total of forty percent of the gross settlement amount for fees and costs is also reasonable.") (citing *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (acknowledging that contingency fees for class funds have ranged from thirty-five percent to forty percent); *Matthews v. Priority Energy Servs., LLC*, No. 6:15-CV-448, 2018 U.S. Dist. LEXIS 82716, 2018 WL 1939327, at \*2 (E.D. Tex. Apr. 20, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 82715, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (approving forty

percent contingency fee in FLSA collective class action that required nearly three years of litigation)); *see also Ellis v. Baptist Mem'l Health Care Corp.*, No. 3:18-CV-73-SA-JMV, 2021 U.S. Dist. LEXIS 60875, at *9 (N.D. Miss. Mar. 30, 2021) (holding 35% fee "has been deemed a reasonable rate within the Fifth Circuit") (collecting cases).

Finally, Plaintiffs' Counsel collectively have spent hundreds of hours investigating and bringing this case to a successful settlement for the benefit of the settlement class members, as described above and as summarized in the Declaration of Drew N. Herrmann. Such efforts have included developing the legal theories of Defendants' wage and hour violations; conducting substantial legal and factual research on the alleged violations; engaging in informal discovery; performing an in-depth review of the data and information exchanged, including significant data analysis; attending mediation; engaging in written correspondence and negotiations; finalizing the Settlement Agreement; and preparing this motion. Moreover, Plaintiffs' Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement. Id. Factors 1 and 7 support the requested fee.[7]

In sum, given that the requested fee is significantly less than the percentages routinely approved by Courts in this Circuit for similar matters, and giving the efforts performed by Plaintiffs' Counsel to bring about a prompt settlement of this matter, the requested fee of 1/3 of the Gross Settlement should be approved.

**F.    Plaintiffs' counsel's expenses should be approved.**

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the

---

[7]    Factor 11 also supports the requested fee. Representing employees in wage and hour matters are different than defense firms which have a steady book of corporate clientele. Typically, defense firms' clients require continuous legal services from their counsel. Comparatively, it is unlikely that many plaintiffs will be seeking additional representation from a plaintiffs' counsel after the conclusion of a lawsuit. The wage claims asserted in this matter do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award.

reimbursement of costs. *See* 29 U.S.C. § 216(b). "Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award." *Quintanilla v. A & R Demolition, Inc*., No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *25 (S.D. Tex. May 7, 2008)

Plaintiffs' Counsel's expenses incurred in this Lawsuit include such costs as mediation fees, court costs, photocopying, postage, courier service, and computer legal research. Exhibit B at ¶ 28; *accord Lopez v. Eats*, No. 3:18-cv-1091-X-BN, 2023 U.S. Dist. LEXIS 111061, at *17 (N.D. Tex. June 28, 2023) ("Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award.") (quoting *Hilton v. Exec. Self Storage Assocs. Inc., No. CIV.A. H-06-2744*, 2009 U.S. Dist. LEXIS 51417, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (cleaned up)). The expenses incurred were reasonable and necessary for the successful prosecution of this matter.

\* \* \*

## PRAYER

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement Agreement as a fair and reasonable compromise of a bona fide dispute; and (2) dismissing this action is in its entirety, subject to the terms of the Settlement Agreement. Plaintiffs further request all such other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,


By: */s/ Drew N. Herrmann*
Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102

ATTORNEYS FOR PLAINTIFFS
AND COLLECTIVE MEMBERS


CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendants regarding this motion and Defendants are not opposed.

*/s/ Drew N. Herrmann*

Drew N. Herrmann


CERTIFICATE OF SERVICE

I certify that on January 26, 2024 the above document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record.

*/s/ Drew N. Herrmann*

Drew N. Herrmann